## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERISH BERGER, et al.,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ELI WEINSTEIN, et al.,** | : | **Nos.   08-5861** |
| **Defendants.** | : | **08-4059** |
| | : | |

## <u>MEMORANDUM</u>

Schiller, J.                                                                                    April 6, 2016

Berish Berger, Kilbride Investments Limited, Busystore Limited in Liquidation, Towerstates Limited, Bergfeld Co. Limited, and Ardenlink Limited ("Judgment Creditors") are trying to execute on a $33 million judgment they secured against Ravinder Chawla, World Acquisitions Partners Corporation, Eli Weinstein, and Pine Projects, LLC, following a lengthy trial in 2010. According to the Judgment Creditors, Defendant/Judgment Debtor Ravinder Chawla has evaded attempts to collect on the judgment by placing virtually all of his assets in the name of his wife, Jatinder Chawla.

Judgment Creditors seek a preliminary injunction that would prevent the Chawlas and others from disguising, concealing, transferring or otherwise disposing of money and property such that it remains outside the reach of Judgment Creditors. The Chawlas contend that this Court lacks the power to enjoin Jatinder, who does not have a judgment entered against her, and that this Court cannot retitle assets that were legally placed into Jatinder's name.

The Court conducted a preliminary injunction hearing on January 21, 2016, and allowed the parties to file supplemental briefing following the hearing. Having considered the briefs, the record before the Court, and the testimony from the hearing, the Court concludes that a preliminary injunction is warranted and will therefore grant the Judgment Creditors' motion. However, the

injunction will be more narrow than the one sought by the Judgment Creditors because the Court cannot retitle assets at this juncture.

## I.      FACTUAL BACKGROUND

A jury found that Defendants perpetrated a $36 fraud related to two Philadelphia real estate development projects, and entered judgment in favor of Plaintiffs. The judgment is over five years old, but Judgment Creditors are still expending significant resources to collect on it. According to Judgment Creditors, they have been thwarted in their attempts to collect their money from Ravinder Chawla because "Chawla operates his businesses and lives his life in such a way as to avoid the reach of his creditors." (Br. in Supp. of J. Creditors' Mot. for Prelim. Inj. [Creditors' Br.] at 3.) Thus, argue Judgment Creditors, "[d]espite his continued and pervasive work in the real estate profession, Judgment Debtor Chawla claims to be insolvent in order to avoid the reach of his creditors." (*Id.*)

These execution proceedings center largely around which assets, if any, Judgment Creditors will be able to access in order to satisfy their judgment.

### A.      Chawla Family Business Interests

In 1987, members of the Chawla family, including Ravinder and his brother Hardeep, formed Sant Properties. (Defs.' Proposed Findings of Fact and Conclusions of Law [Defs.' FOF] ¶ 14.) In 1995, the Sant Properties partnership agreement was amended and Hardeep and Ravinder became equal partners in that venture. (*Id.* ¶ 15.) In 2000, Ravinder transferred his interest in Sant Properties to Hardeep. (*Id.* ¶ 16.) Subsequently, a 1% interest in Sant Properties was transferred to Hardeep's wife, Irene Chawla. (*Id.* ¶ 17.) Hardeep was also involved with a company called World Acquisition Partners Corporation, which subsequently ceased operations in 2008. (Prelim. Inj. Hr'g Tr. at 26-28.) World Acquisition Partners Corporation was owned by Ravinder Chawla, and Hardeep handled the

2

daily books and accounts for World Acquisition Partners Corporation. (*Id*. at 32, 40.) World Acquisition Partners Corporation and Sant Properties maintained different bank accounts, though there was "intercompany account activity," including the loaning of funds between the companies. (*Id*. at 34.)

In 2008, Sant Properties and three single purpose entities agreed to sell a number of properties, including twelve owned by Sant Properties, to the entity owned by Aron Abecassis, Abecassis Enterprises, LLC, for $57,250,000.00. (Defs.' FOF ¶ 36.) In February 2008, Abecassis executed a note for $19,206,850 for the purchase of the twelve properties. (*Id*. ¶ 37.) From 2011 to 2013, Abecassis failed to pay on the note. (*Id*. ¶ 39.) Sant Properties sought—but was unable—to refinance. (*Id*. ¶ 40.) As a result, in 2013, Sant Properties transferred the properties it owned to a company called Auroras Encore, LLC. (Prelim. Inj. Hr'g Tr. at 46, 162, 165.) Jatinder Chawla owns a 66% membership interest in Auroras Encore, LLC; she is also the 100% owner of Goldencents, Inc., which is the managing member of Auroras Encore, LLC. (Defs.' FOF ¶ 45.) Goldencents, Inc. owns an additional 1% of Auroras Encore, LLC. (*Id*.) Ravinder Chawla, on the other hand, "does not own any interest in Auroras Encore, LLC, or its managing member, Goldencents, Inc., nor does he perform any management services for any of the Auroras Encore properties." (*Id*. ¶ 47.)

### B.     Jatinder and Ravinder Chawla's Finances

Ravinder Chawla has an indirect interest in 1602 Acquisition GP, LLC, which is a .99% limited partner of Philadelphia Chancellor, LP. (Creditors' Br. Ex. A [Ravinder Chawla Interrogs.].) With respect to personal property valued at over $500, Ravinder owns five business suits, a Breitling watch, and a gold chain. (*Id*.) He holds no interest in any real estate investment trusts, has no individual or joint interests in any savings, money market, or checking accounts, and has no direct

3

or indirect interest in any stocks, bonds, mutual funds, money market funds, securities, or negotiable instruments. (*Id*.) He is the beneficiary of a single irrevocable trust. (*Id*.) Ravinder has not applied for any loans or mortgages since October 12, 2010, though he has acted as a guarantor on a number of loans within the past three years. (*Id*.) He has no retirement accounts. (*Id*.)

Ravinder testified that his role in the Chawla family business was to "take the lead in sales and marketing and identifying the properties," including sometimes negotiating the financing deals. (Prelim. Inj. Hr'g Tr. at 200.) Ravinder testified that he was not directly compensated for his work, but that he was compensated indirectly because his brother, Hardeep, took care of Ravinder's family. (*Id*. at 203.) Specifically, the family business paid for his car, private school education for his children, home repairs, meals, attorneys' fees, and at times provided him with cash. (*Id*. at 203-05.)

Jatinder could provide little information about her husband's business dealings. She could not answer questions about what Ravinder did for a job, if he traveled for work, if he had any employees or business partners, or if he was compensated for his work. (Creditors' Br. Ex. F [Jatinder Chawla Dep.] at 24, 31.) She also could not answer whether her husband invested in or developed real estate. (*Id*. at 107.) Hardeep Chawla testified that the only money that Ravinder sees from any distributions or sales related to the family business is what Jatinder receives and elects to provide to her husband. (Prelim. Inj. Hr'g Tr. at 78.) Jatinder, however, did not know how Ravinder paid for items on a daily basis. (Jatinder Chawla Dep. at 38-39.) She was aware that her husband was receiving social security disability benefits but she did not know why and testified that her husband was not disabled, though he previously was treated for seizures. (*Id*. at 40-42.) She was unaware if her husband owned any stocks. (*Id*. at 50.) The home where she lives with her family was owned by her and her oldest son; she pays the mortgage from her monthly distribution, but she was sometimes

4

behind on payments if the distribution was not large enough. (*Id*. at 55-59.)

In contrast to her husband Ravinder, Jatinder Chawla has ownership interests in a number of companies whose primary assets are commercial and residential real estate. Jatinder was aware that she has an ownership interest in a number of real estate partnerships, but she was unable to identify any real estate partnership in which she maintained an ownership interest. (Prelim. Inj. Hr'g Tr. at 243.) Moreover, although Jatinder owns a significant stake in a number of businesses that own properties, she did not contribute any capital to secure those stakes. (*Id*. at 50-56.) For example, as noted previously, Jatinder owns a 66% interest in Auroras Encore, LLC. (*Id*. at 65.) Jatinder is also the owner, president, secretary, and treasurer of Goldencents, which is the managing member of Auroras Encore. (*Id*. at 66, 69.) Goldencents is the main operating company that pays the family and office expenses to third parties. (*Id*. at 66.) Jatinder receives a monthly stipend from the Goldencents bank account, typically around $20,000, cash flow permitting. (*Id*. at 80-81, 86, 105, 238-39.) Hardeep provided Jatinder with the distributions, but she testified that she was not sure from what company or entity the distributions originated. (Jatinder Chawla Dep. at 22.) Hardeep testified that he recorded the transaction as a "management fee," although "the accountants change it to distribution, management fee or whatever they have to do." (Prelim. Inj. Hr'g Tr. at 81.) Jatinder received this fee though she performed no services for the family business. (*Id*. at 82-83.) Indeed, although her tax returns from 2010 state that she received nearly $200,000 from property management, she could not recall having received the money and stated that she "[didn't] do property management." (Jatinder Chawla Dep. at 110-12.) She also could not recall receiving $263,000 in 2011 for property management. (*Id*. at 113.) At the preliminary injunction hearing, Jatinder testified that she performed no real estate management services, nor could she explain why

her tax return reflected that she earned income for management fees. (Prelim. Inj. Hr'g Tr. at 244-45.)

With respect to payment and expenses paid from the Goldencents account, Jatinder testified that she wrote checks to pay bills when her brother-in-law, Hardeep, instructed her to.  (Jatinder Chawla Dep. at 13-14.) Hardeep would provide the checkbook, but Jatinder could not explain why she wrote the checks. (*Id*. at 14.) Jatinder financially supported herself and her family through the monthly distribution that ranged from $5,000 to $20,000. (*Id*. at 21-22.) The family business paid for health insurance for Jatinder, Ravinder, and their children, as well as private school tuition and expenses for the children. (Prelim. Inj. Hr'g Tr. at 86-88.) The business also paid for car leases for Jatinder, Ravinder, and their oldest child. (*Id*. at 89-90; *see also* Jatinder Chawla Dep. at 28-30 ("[A]ll the cars are leased, and they are under my name.").) The business has also paid for renovations for Jatinder and Ravinder's home. (Prelim. Inj. Hr'g Tr. at 92.)

The record includes evidence of other financial dealings involving Jatinder Chawla. For example, she could not recall owning property at 2200 Pine Street, although she apparently authorized her signature on a document transferring the property for $242,700. (Jatinder Chawla Dep. at 67-71.) She did not know where the proceeds of the sale went. (*Id*. at 71-72.) She also was unaware of the purpose of a bank account in her name at First Caribbean. (*Id*. at 78-80.) Jatinder was also asked about a number of loans with which she was involved, including one in which her personal jewelry was pledged. (*Id*. at 98-100.) Though she was the borrower listed on that loan, she did not ask for the loan, did not know anything about the why the loan was made, nor did she receive the proceeds of the loan. (*Id*. at 98.) Despite her signature appearing on the mortgage document, she could not recall seeing a mortgage dated April 18, 2013, in the amount of $29 million. (*Id*. at 152-

6

53.) She did not recall what she was signing for or reading or even seeing the document. (*Id*.) Indeed,

Jatinder could provide no information about her investment portfolio.

> Q:     You'd agree with me that you've seen a lot of documents that show that you
>        have investments in real estate, right?
> A:     Yes.
> Q:     How is it that you go about making these investments?
> A:     On the advice of the lawyers or the accountant, that's how I do it.
> Q:     Do you select the properties that you want to invest in?
> A:     No, I don't.
> Q:     How does that happen?
> A:     I don't understand the question.
> Q:     Is there someone who goes out and identifies properties for you –
> A:     Yes.
> Q:     – to invest in?
> A:     I don't know who does it. Somebody does.
> Q:     Is it your husband?
> A:     I don't know.
> Q:     Do you have any idea where the money comes from that you invested in these
>        properties?
> A:     I don't.
> Q:     Is the money that's used to invest in these properties, is it yours?
> A:     It's not mine.
> Q:     Do you know whose it is?
> A:     I don't know.
> Q:     Is it Hardeep's?
> A:     I don't know.
> Q:     Is it your husband's?
> A:     I don't know.

(*Id*. at 168-69.)

## C.     The Chancellor Street Property

A great deal of Judgment Creditors' execution efforts have centered around Philadelphia

Chancellor, LP. Philadelphia Chancellor, LP, was formed on November 9, 2004, for the purpose of

acquiring, owning, operating, and managing the property located at 1602-34 Chancellor Street.

(Defs.' FOF ¶ 28.) The property was purchased in May 2006. (*Id*. ¶ 29.) Originally, 1602

Acquisitions GP, LLP was the general partner of Philadelphia Chancellor, LP and owned a 1% partnership interest. (*Id.* ¶ 30.) Ravinder Chawla and Richard Zeghibe were the original managing partners of 1602 Acquisitions GP, LLC. (*Id.* ¶ 32.) In 2008, Philadelphia Chancellor GP, LLC, was substituted for 1602 Acquisitions GP, LLC, as the general partner of Philadelphia Chancellor, LP, and the limited partners were Irene Chawla and Jatinder Chawla, the Zeghibe Family Trust, and William McNamara. (*Id.* ¶ 33.) McNamara testified that he negotiated with Ravinder Chawla with respect to joining the partnership, and Ravinder was instrumental in negotiating deals for the entity. (Prelim. Inj. Hr'g Tr. at 178-79.) Jatinder Chawla and Irene Chawla each had a 39% partnership interest, William McNamara a 12% interest, the Zeghibe Family Trust a 7% interest, Philadelphia Chancellor GP a 1% interest, and 1602 Acquisition GP maintained a nominal interest in the partnership. (Defs.' FOF ¶ 33.)

Jatinder stated that she was aware of an entity called Philadelphia Chancellor, LP, but she could provide no details about it. (Prelim. Inj. Hr'g Tr. at 177-78.) She did not know if she was an owner of Philadelphia Chancellor, LP. (*Id.* at 178.) She was not aware of any contributions to or distributions from Philadelphia Chancellor, LP, any loans involving that entity, nor did she know that she was partners with William McNamara in Philadelphia Chancellor, LP. (*Id.* at 179-83.)

Portions of the properties owned by Philadelphia Chancellor, LP, have already been sold, in one case for $5 million and, in another case, for $1.525 million. (Creditors' Br. at 12-13.) On December 9, 2014, at Ravinder Chawla's request, Philadelphia Chancellor, LP, made a $400,000 distribution to partners. (Prelim. Inj. Hr'g Tr. at 179.) Apparently, the distribution did not go to all of the partners. Rather, a $200,000 distribution went to Jatinder Chawla, and a $200,000 distribution went to Irene Chawla. (Creditors' Br. Ex. I [William McNamara Dep.] at 111.) Additional

8

distributions were made to the partners, including Jatinder Chawla and Irene Chawla, on March 24, 2015, and April 2, 2015. (*Id*. at 139-41.) Jatinder Chawla, however, could not recall having received these distributions. (Jatinder Chawla Dep. at 180-81.)

The remainder of the property located on Chancellor Street is under contract for $25 million, with the Chawla family slated to receive between $8 million and $10 million from the proceeds of that sale. (Prelim. Inj. Hr'g Tr. at 122-23.)

## II.    DISCUSSION

The Court has reviewed the records, listened to the testimony, and digested the legal arguments presented in the briefs. The Judgment Creditors argue that they are unable to collect on their multimillion dollar judgment because the person against whom they have a judgment, Ravinder Chawla, has painted himself as a man with few assets. Ravinder's wife and family, however, have significant assets. In reality, Judgment Creditors contend, Ravinder has used his wife, Jatinder, to shield assets and render him judgment proof. According to Judgment Creditors, this Court has the equitable power to recognize the reality of the situation here, and to declare that Ravinder Chawla is a partner in his family's business ventures. Once the Court declares that a partnership exists, the Federal Rules of Civil Procedure allow for a court to appoint a receiver and to issue a charging order against Ravinder's partnership interests that would allow them to collect their judgment from Ravinder.

To address these contentions, the Court will answer two questions. First, is there a partnership here? Second, does the Court have the power to grant injunctive relief?

9

A.      Can the Court retitle assets?

Judgment Creditors spend a great deal of time arguing that the Chawla family business is a *de facto* partnership between Ravinder Chawla and Hardeep Chawla. (J. Creditors' Mem. of Law in Supp. of Their Proposed Findings of Fact and Conclusions of Law [J. Creditors' FOF Mem.] at 1-12.) To develop this argument, they lay out Pennsylvania law on the formation of partnerships. (*Id*. at 1-4.) Judgment Creditors then turn to whether the actions of Ravinder and Hardeep Chawla establish that a partnership between the two brothers existed. (*Id*. at 4-7.) Ultimately, Judgment Creditors contend that "given the overwhelming evidence that the Chawla brothers operate their Chawla Family Business as a general partnership, this Court should exercise [its] equitable powers and find that the family's real estate interests are all assets of the 'partnership,' notwithstanding how they are titled." (*Id*. at 8.) Next, "the Court should . . . enter a charging order on [Ravinder's] interest in that partnership and appoint a receiver to identify and protect the assets held therein." (*Id*.)

Ravinder and Jatinder Chawla argue that the law prohibits this Court from using post-judgment execution proceedings to impose liability on Jatinder for the judgment entered against Ravinder. (Suppl. Mem. of Law in Supp. of Defs.' Proposed Findings of Fact and Conclusions of Law [Chawla Suppl Mem.] at 4-5.) Additionally, Hardeep and Irene Chawla argue that the record demonstrates that no partnership exists. (Non-Parties & Intervenor Movants Hardeep and Irene Chawlas' Suppl. Resp. Br. in Supp. of Their Mot. to Intervene Pursuant to Fed. R. Civ. P. 24 [Intervenor Br.] at 3.) Rather, Hardeep has agreed to provide for his brother's family. (*Id*.) To further that goal, Jatinder has been granted partnership interests because she is more stable and responsible than Ravinder, who has squandered money and has suffered numerous business failures. (*Id*. at 3-4.)

"A partnership is an association of two or more persons to carry on as co-owners a business

for profit." 15 Pa. Cons. Stat. § 8311(a). In Pennsylvania, a partnership agreement need not be in writing; the creation of a partnership can be express or implied based on the surrounding circumstances. *See The Knit With v. Knitting Fever, Inc.*, 742 F. Supp. 2d 568, 580 (E.D. Pa. Sept. 27, 2010) ("Moreover, a partner's commitment to a partnership may be established merely by conduct which manifests an intention that a party be considered a partner."). "To determine if a partnership exists, there must be clear, mutual ascent on the part of two or more persons to form a partnership." *Leprino Foods Co. v. Gress Poultry, Inc.*, 379 F. Supp. 2d 650, 655 (M.D. Pa. 2005). In Pennsylvania, the existence of a partnership is a question of fact. *Knit With*, 742 F. Supp. 2d at 580; *Silco Vending Co. v. Quinn*, 461 A.2d 1324, 1326 (Pa. Super. Ct. 1983) ("[I]t is well established that in Pennsylvania the existence of a partnership and the identities of its members are considered questions of fact."). The burden of proof rests with the party seeking to prove the existence of a partnership. *In re Jackson*, 28 B.R. 559, 563 (Bankr. E.D. Pa. 1983).

Though a partnership may exist here, this Court is somewhat limited by the current posture of this litigation. Pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located."

In Pennsylvania,

> On petition of the plaintiff, after notice and hearing, the court in which a judgment has been entered may, before or after the issuance of a writ of execution, enter an order against any party or person (1) enjoining the negotiation, transfer, assignment or other disposition of any security, document of title, pawn ticket, instrument, mortgage, or document representing any property interest of the defendant subject to execution; (2) enjoining the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution; (3) directing the defendant or any other party or person

11

> to take such action as the court may direct to preserve collateral security for property of the defendant levied upon or attached, or any security interest levied upon or attached; (4) directing the disclosure to the sheriff of the whereabouts of property of the defendant; (5) directing that property of the defendant which has been removed from the county or concealed for the purpose of avoiding execution shall be delivered to the sheriff or made available for execution; and (6) granting such other relief as may be deemed necessary and appropriate.

Pa. R. Civ. P. 3118. Pennsylvania law permits a court to "charge the interest of the debtor partner with payment of the unsatisfied amount of the judgment debt with interest thereon and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership." 15 Pa. Cons. Stat. § 8345(a).

A preliminary injunction motion filed with this Court is not the proper method for adjudicating the status of Ravinder Chawla's interests in the business ventures at issue. In *Greater Valley Terminal Corp. v. Goodman*, 202 A.2d 89 (Pa. 1964), the Pennsylvania Supreme Court considered whether an alleged fraudulent transfer could be set aside by supplementary proceedings in aid of execution under Pennsylvania law. The judgment creditor, Greater Valley Terminal, claimed judgment debtor Goodman made fraudulent conveyances from Goodman's sole proprietorship. Greater Valley Terminal sought to execute on assets and stock certificates. Relying on the Pennsylvania Rules of Civil Procedure relating to execution proceedings, the lower court set aside the conveyances as fraudulent. The Pennsylvania Supreme Court reversed. The court concluded that voiding fraudulent conveyances was not authorized by Rule 3118. *Goodman*, 202 A.2d at 92. Pennsylvania's judgment execution proceedings existed to preserve the status quo as to the judgment debtor's property. *Id*. Such proceedings therefore did not extend to voiding fraudulent transfers because that would require the court to adjudicate title to the property in question and necessitate a

12

change in the status quo. *Id*. ("Only property the title to which is clearly in the judgment-debtor is subject to the terms of [Pennsylvania Rule of Civil Procedure 3118]."). A court cannot rely on supplementary execution proceedings to adjudicate title to property because that would deny the debtor "the safeguards of a full hearing," including a jury trial. *Id*. at 93. Moreover, conducting a comprehensive hearing as part of a supplementary execution proceeding was insufficient. "In the absence of a waiver, a court cannot merely by ignoring the terms of a rule or statute and by following procedures not authorized therein, adjudicate issues which are not properly determined under the procedures authorized by that rule or statute." *Id*. at 94. Rule 3118 does not allow courts to adjudicate title to disputed property. *See Stop 35, Inc. v. Haines*, 543 A.2d 1133, 1137 n.2 (Pa. Super. Ct. 1988) ("Pa. R.C.P. 3118, which provides for supplementary relief in aid of execution and pursuant to which the petition in the instant case was filed, is not to be employed to adjudicate the title to property or to set aside fraudulent conveyances.").

The Judgment Creditors have not persuaded this Court to ignore this pronouncement. Despite the extensive record developed about how the Chawla's operate their business dealings, none of the cases relied upon by the Judgment Creditors supports the proposition that a district court's equitable powers include the ability to declare that a partnership exists here and issue a charging order against the interests of a debtor involved in that judicially-found entity. The parties have rights and the process must be respected. Accordingly, the Court will not at this time adjudicate title to the property at issue.

**B.    Can the Court grant injunctive relief?**

Ensuring that the Chawlas do not have a partnership forced on them by judicial fiat does not mean that this Court is without power to enjoin the disturbing behavior that has been exposed here.

13

Judgment Creditors have put forth extensive evidence that the actions of a judgment debtor are deliberately aimed at thwarting attempts to collect on their multimillion dollar judgment.

Jatinder Chawla argues that Judgment Creditors are not entitled to relief because Jatinder is not a debtor in the underlying litigation and her individual and marital assets are not subject to execution. (*See* Mem. of Law in Supp. of Reply of Non-Party, Jatinder Chawla, in Opp'n to Judgment Creditors' Mot. for TRO, Prelim. and Permanent Inj., Charging Order, Appointment of Receiver and Other Equitable Relief and Countermotion of Jatinder Chawla to Dismiss J. Creditors' Mot. on the Basis of Lack of Jurisdiction [Jatinder Chawla's Opp'n] at 3.)

Notwithstanding these objections, the Court concludes that its equitable powers permit it to enter a preliminary injunction here. In *Southeast National Bank of Pennsylvania v. Spectrum Leasing Corp.*, Civ. A. No. 84-3034, 1986 WL 1240 (E.D. Pa. Jan. 27, 1986), Southeast National Bank obtained a judgment against Spectrum Leasing and Michael Wueste. Southeast National Bank then sought an injunction against Spectrum Leasing, Michael Wueste, and Wueste's wife, Linda Paskal, that would prevent them from disposing of any property. Defendants argued that because Wueste and Paskal held the property at issue as tenants by the entirety, it was not subject to execution, and Southeast National Bank was therefore not entitled to an injunction. The court, citing its general equitable powers, rejected the argument. *Id*. at *2. The court recognized that Paskal would be affected by the injunction. *Id*. at *3 n.3. Nonetheless, the court concluded that "her interests in the properties [were] outweighed by the interest of Southeast in attempting to execute on its judgment." *Id*. Moreover, the Court's equitable powers extend beyond that which may be permissible under the Pennsylvania Rules of Civil Procedure. *See Ctr. Capital Corp. v. PRA Aviation, LLC*, Civ. A. No. 09-4323, 2014 WL 1281060, at *3 (E.D. Pa. Mar. 31, 2014).

14

Having decided that the Court's equitable powers allow it to grant injunctive relief here, Judgment Creditor still must demonstrate that they are entitled to injunctive relief. When faced with a motion for preliminary injunction, the Court determines whether: (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably harmed by denial of the relief; (3) granting preliminary relief will result in even greater harm to the nonmoving party; and (4) granting the preliminary relief will be in the public interest. *Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011).

The Court concludes that Judgment Creditors have met the four factors necessary to grant injunctive relief. First, the Judgment Creditors have prevailed on the merits of the case. *See State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy*, 376 F. App'x 182, 184 (3d Cir. 2010) (concluding that obtaining judgment in its favor satisfied first prong of test for preliminary injunction). Of course, Jatinder is correct that Judgment Creditors have not obtained a judgment against her. Nonetheless, she was a party to the underlying litigation and Federal Rule of Civil Procedure 65(d)(2)(c) provides that an injunction can bind not only parties, but "other persons who are in active concert or participation with parties, and the officers, agents, servants, employees, and attorneys of parties."

Judgment Creditors have also shown irreparable harm absent an injunction. Absent the extraordinary remedy of an injunction, Judgment Creditors have little to no hope of executing on the judgment. *See State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*, Civ. A. No. 03-5595, 2009 WL 2096274, at *4 (E.D. Pa. July 14, 2009) (finding the irreparable harm prong satisfied when judgment alone was insufficient to secure payment). The evidence before the Court presents an egregious example of a judgment debtor purposefully structuring his financial dealings

15

to avoid a significant judgment against him. *See Tennenbaum Capital Partners, LLC v. Kennedy*, Civ. A. No. 09-194, 2012 WL 748256, at *2 (noting that the court's general equity powers allow it to issue an injunction to protect a plaintiff from a dissolution of assets from which a judgment can be satisfied). Ravinder Chawla has made no attempt to pay a single cent of the $33 million judgment entered against him. Rather, Ravinder continues to operate numerous businesses, and to develop and invest in significant real estate deals, confident that he is judgment proof because his wife's name is on everything. Jatinder's name has been used to secure mortgages and other loans, and has been used to invest in millions of dollars of real estate. She has also maintained an ownership interest in a number of businesses. This, however, is pure fantasy. Jatinder Chawla had no idea of her role in these businesses, was unaware why she was taking out certain loans, and was ignorant as to the source of funds for all of "her" real estate investments. She plays no role in any of these business entities or real estate deals. Judgment Creditors have put forth a great deal of evidence that Jatinder Chawla is being used solely as a conduit for Ravinder's business deals.

The Court is perturbed that Ravinder, who often identifies properties, and takes the lead when negotiating deals, claims to receive no compensation for his work, claims to have no income other than social security checks that are deposited into either his wife or child's bank account, and must ask for cash from his wife, brother, or mother. (Prelim. Inj. Hr'g Tr. at 200, 209.) Moreover, Ravinder has conceded that he had an interest in "the family real estate partnership." (*Id*. at 200-02.) Ravinder's wife, on the other hand, regularly receives a significant monthly stipend, earns management fees for work she does not perform, and owns lucrative partnership interests despite making no contributions to, or doing any work for, those partnership interests. Specifically, Jatinder, who was not involved in the management of the business, has received close to a million dollars in

16

management fees from the family business. (*Id*. at 206-09.) While the Court may not be able to declare this arrangement a partnership and charge Ravinder's interest in that partnership, the Court is not bound to ignore the obvious dodge to pay a validly-obtained multimillion dollar judgment. The Court concludes that Jatinder is actively participating with Ravinder such that this Court can enjoin her to prevent her husband from continuing to thwart collection of the $33 million judgment against Ravinder Chawla.

The balance of the harms weighs in favor of granting an injunction. It has been years since the judgment was entered and Judgment Creditors have yet to see a dime. Despite Jatinder Chawla's cries of poverty, the injunction that the Court will enter is not so broad as to place her family in financial peril.

Finally, granting an injunction is in the public interest because "the public has an interest in the enforcement of judgments." *State Farm*, 376 F. App'x at 184.

### C.   Bond

Having determined that an injunction is warranted, the Court must order Judgment Creditors to post security "in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the bond is left to the discretion of the Court. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988).

Jatinder Chawla is a limited partner of 10551 Decatur Road Investments, LP ("Decatur"), and owns a 20% interest in that entity. (Defs.' FOF ¶ 103.) Decatur owns property located at 2500 Grant Avenue in Philadelphia. (*Id*. ¶ 106.) Decatur is attempting to secure a three million dollar loan to address issues that have arisen with the property. (*Id*. ¶ 107.) The bank from which the loan is being

17

sought has demanded that Jatinder pledge her partnership interest in the Chancellor Street property as collateral for the loan. (*Id*. ¶ 108.) Defendants claim that they risk losing the property if they cannot obtain the loan, and they claim that the property was recently appraised at fourteen million dollars. (*Id*. ¶¶ 110-11.) Thus, they claim that fourteen million dollars is the appropriate security that should be required of Judgment Creditors. (*Id*. ¶¶ 112-13.) Judgment Creditors counter that the "amount of the judgment and the fact that millions of dollars remain due and owing on the judgment" counsel in favor of a minimal bond. (J. Creditors' FOF Mem. at 18.)

At this stage of the proceedings, the Court will order Judgment Creditors to post a bond in the amount of one million dollars. The minimal bond sought by Judgment Creditors fails to take into account the potential damage that could be suffered by Defendants. The fourteen million dollar security sought by Defendants, however, is significantly greater than necessary, considering the $33 million dollar judgment owed. The Court considers a one million dollar bond sufficient to protect the interests of Defendants.

## III.    CONCLUSION

The Court believes that the record in this case clearly demonstrates that Ravinder Chawla has structured his assets in a way that deliberately thwarts the Judgment Creditors' attempts to execute on the judgment. Indeed, the Court is concerned that the record reveals evidence of fraud or possible criminal conduct. Although the Court cannot unilaterally declare a partnership exists here and charge Ravinder Chawla's interest in such a partnership, equity demands that assets are protected so that Judgment Creditors can satisfy their judgment. Accordingly, the motion for a preliminary injunction is granted. An Order consistent with this Memorandum will be docketed separately.